IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TIFFANYE BREEDLOVE as personal representative of the estate of Torey Breedlove, deceased, TAMESHA PRINCE on behalf of T.B.1, SHARELLE TYSON on behalf of T.B.2, and TERESA JONES on behalf of T.B.3 and T.B.4,

Case No.: 6:11-CV-991-ORL-28-GJK

Plaintiffs,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant.

_______________________________________/

**AFFIDAVIT OF RICHARD SCHMELTZER**

STATE OF FLORIDA
COUNTY OF ORANGE

BEFORE ME, the undersigned Notary Public, this date personally appeared RICHARD SCHMELTZER, who after being first duly sworn upon oath, deposes and says as follows:

1. I am over 21 years of age and competent to make this Declaration.

2. I am currently a duly appointed Orange County deputy sheriff and held that position since 2001. From November 2008 to October 2010, I was assigned to the Orange County Sheriff's Office Auto Theft Unit, Special Operations Division. I am familiar with the events on January 5, 2010 leading up to the death of Torey Breedlove, as well as an investigation of Mr. Breedlove in the fall of 2009. The facts set forth in this Affidavit are based on my own personal knowledge.

EXHIBIT
tabbies
B

3. In November 2009, I found a stolen Dodge Ram truck in the Waterways Apartments in Orlando, Florida. The stolen Dodge Ram truck had the license plate of another vehicle which had not been reported stolen. At the time, we were conducting an investigation in which Mr. Breedlove was a suspect, and his personal vehicle was parked in the same Waterways Apartment complex as the stolen Dodge Ram. Later that evening, when we attempted to apprehend two suspects driving away in that stolen Dodge Ram truck, the two suspects fled on foot. One of the suspects was apprehended (Demetric Carter).

4. On January 4, 2010, I located another stolen Dodge Ram truck(the "stolen truck"), model year 2003, in the Alta Westgate apartment complex (the "Complex") in Orlando, Florida. Its license plate had been switched with that of another vehicle which had not been reported stolen.

5. When I looked through the window of the stolen truck, I could see that its ignition had been removed and placed back in which, based on my experience, is consistent with the ignition mechanism having been bypassed, and is a common practice of individuals involved in auto theft.

6. At approximately 2:00 a.m. on January 5, 2010, a surveillance device on the stolen truck alerted my Unit to the movement of the stolen truck.

7. When the stolen truck returned to the Complex around 5:00 a.m., I was parked in my unmarked silver Ford Explorer inside the Complex to the west of building 8, within sight of Mr. Breedlove's personal vehicle, a GMC Yukon Denali (the "Denali"). My role was to block in the Denali by parking behind it when the command was given.

8. After I heard the command to move in, I backed out of my parking space and drove toward Building 9, with Building 8 on my left. I made a right turn so that I was heading south to the location where the Denali was parked in order to park behind the Denali and block it in.

9. The Denali collided with my Ford Explorer on the corner of the front end and passenger side. It then continued to drive toward the north (heading toward building 8 of the Complex) and began to make a turn around the corner to the west.

10. Within seconds, Mr. Breedlove's Denali and Sergeant Dennis Ela's unmarked blue Ford F-150 truck were nose to nose.

11. I got out of my vehicle and took a position on the rear passenger side of my vehicle. On the attached diagram (**Exhibit 1**), which represents the parking lot area in front of buildings 8 and 9 at the Complex, my car is by itself in the middle of the page with a line indicating the path I took when exiting my driver's side and going around the front of my vehicle to get to the rear passenger side.

12. From my vantage point, I could see that the Denali was pushing forward against Sergeant Ela's truck with its wheels cut to the left in the direction of other deputies. I was in fear for the safety of the other deputies. I began to fire my weapon, and other deputies fired their weapons as well (the "first volley").

13. There was then a pause in the shooting to assess the situation and the threat level and to try and get Mr. Breedlove to comply and surrender. At that time, I and the other deputies were screaming at Mr. Breedlove, "put your hands up" and "stop your vehicle." I then observed Mr. Breedlove with his hands up and I heard Mr. Breedlove say something to suggest that he was surrendering. I don't recall the exact words, but it

appeared to be something to the effect of "I give up." From what I observed, I had the initial impression that Mr. Breedlove was surrendering at that time.

14. I – along with other deputies – began to approach the Denali to apprehend Mr. Breedlove. The Denali's engine then started revving again, and the Denali struck Sergeant Ela's truck again. Cars were parked to the right of the Denali, and it appeared to me that Mr. Breedlove's most practical avenue of escape would have been in the direction of the deputies closest to the Denali and Sergeant Ela's truck.

15. As the engine of the Denali revved, the wheels appeared to turn to the left toward the deputies on foot. It was my perception that Mr. Breedlove was about to run over the deputies who were on foot in close proximity to the Denali, if his vehicle was able to break free.

16. At that time, I began firing my weapon out of fear that Mr. Breedlove's Denali could break free and hit and seriously injure or kill other deputies. Other deputies were firing their weapons as well (the "second volley").

17. After the second volley ended, no further shots were fired.

18. Each time I fired my firearm, I was in fear for the lives of other deputies from Mr. Breedlove's vehicle. It was my belief when I fired that Mr. Breedlove intended to seriously injure or kill other deputies on the scene, and it was my belief when I fired that I was protecting the lives of other deputies who were in close enough proximity to Mr. Breedlove's Denali to be seriously injured or killed.

19. My vehicle was damaged in the collision with the Denali, and I subsequently had to receive medical treatment for injuries I sustained in that collision.

FURTHER AFFIANT SAYETH NOT.

______________________________
RICHARD SCHMELTZER

THE FOREGOING instrument was sworn to and subscribed before me this _______ day of May, 2012, by RICHARD SCHMELTZER who is personally known to me (__) or who provided ______________________________ ______ as proper identification.

Darla D. Jenkins
Notary Public

Darla D Jenkins
(Print)

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
DARLA D. JENKINS
MY COMMISSION # DD 944350
EXPIRES: December 6, 2013
Bonded Thru Budget Notary Services




Richard Schmelzer
12/7/2010

00000131

EXHIBIT
1