IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TIFFANYE BREEDLOVE as personal representative of the estate of Torey Breedlove, deceased, TAMESHA PRINCE on behalf of T.B.1, SHARELLE TYSON on behalf of T.B.2, and TERESA JONES on behalf of T.B.3 and T.B.4,

Case No.: 6:11-CV-991-ORL-28-GJK

Plaintiffs,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant.
_______________________________________/

**AFFIDAVIT OF JOHN LEONE**

STATE OF FLORIDA
COUNTY OF ORANGE

BEFORE ME, the undersigned Notary Public, this date personally appeared JOHN LEONE, who after being first duly sworn upon oath, deposes and says as follows:

1. I am over 21 years of age and competent to make this Declaration.

2. I am currently a duly appointed Orange County deputy sheriff assigned to the Investigative Support Squad (formerly known as the Auto TRAP Unit) and held that position on January 5, 2010. I am familiar with the events on January 5, 2010 leading up to the death of Torey Breedlove. The facts set forth in this Affidavit are based on my own personal knowledge.

EXHIBIT
E
tabbies

3. At approximately 2:00 a.m. on January 5, 2010, I was called to respond to the Alta Westgate apartment complex (the "Complex") in Orlando, Florida.

4. Upon arrival, I parked my car within sight of Mr. Breedlove's personal vehicle, a GMC Yukon Denali (the "Denali"). I was awaiting the return of a stolen Dodge Ram truck (the "stolen truck") which had been under surveillance by various other Orange County deputy sheriffs. I was wearing my Orange County Sheriff's tactical vest which is black with the word "SHERIFF" written in white letters on the front and back, and a star on the front. Attached as **Composite Exhibit 1** are two photographs (front and back) of me wearing this tactical vest.

5. Mr. Breedlove was suspected of stealing the Dodge Ram and of an earlier crime in November 2009. I was part of the team whose responsibility it was to effect an arrest of the suspect.

6. I observed Mr. Breedlove park the stolen truck. I observed Mr. Breedlove get out of the driver's side of the stolen truck. I was able to recognize Mr. Breedlove based on having seen photographs of him before the night of January 5, 2010.

7. I saw Mr. Breedlove walk with one or more items in his hands from the stolen truck to the Denali, where he opened up the Denali's back hatch. At this point, I gave communication over my Orange County Sheriff's radio for other deputies to move in if they hadn't already begun to do so.

8. Detective Jason Gorberg, who was in a vehicle already parked in the Complex, started his engine. As soon as Detective Gorberg started his engine, Mr.

Breedlove began to move quickly. Mr. Breedlove closed his back hatch, got into the Denali, and started his engine.

9. From the time Mr. Breedlove got out of the stolen truck until he got into the driver's seat of the Denali, I never lost sight of him.

10. Detective Gorberg and I both began approaching the Denali on foot. Detective Gorberg was approaching the Denali from the driver's side of Denali. Detective Gorberg was wearing his tactical vest, which is a vest identical to the one shown on me in **Composite Exhibit 1**. I observed Detective Gorberg give commands to Mr. Breedlove from a few feet away.

11. I approached the front of the Denali, which was parked in a parking spot facing a raised parking island. As I was on this raised island, my weapon was drawn, and I began yelling at Mr. Breedlove, "Police, put your hands up." I could see that Mr. Breedlove saw me, because we made eye contact.

12. On the attached diagram (**Exhibit 2**), which represents the parking lot area in front of buildings 8 and 9 at the Complex, I drew an oval shape next to the words "1st challenge" to indicate the raised parking island on which I was standing. The Denali was parked where the thin rectangle, in the empty parking spot to the right (east) of where I drew the oval shape, appears on the diagram. The stolen truck was parked four spots to the south of the Denali, and appears on the diagram as the only car parked in a space below the Denali's parking spot.

13. Mr. Breedlove then reversed out of the parking spot and shortly thereafter, he collided with Deputy Rick Schmeltzer's unmarked Sheriff's vehicle, a Ford Explorer.

Mr. Breedlove then continued to drive toward the north (heading toward building 8 of the Complex) and began to make a turn around the corner to the west.

14. Within seconds, Mr. Breedlove's Denali and Sergeant Dennis Ela's unmarked blue Ford F-150 truck were nose to nose.

15. I was at the passenger side of Sergeant Ela's truck and estimate the distance to have been less than 15 feet away from Mr. Breedlove who was in the Denali driver's seat. From this vantage point, I could see that the Denali was pushing against Sergeant Ela's truck and I could hear the Denali's engine racing. I could also see that the wheels of the Denali appeared to be turned to the left. Cars were parked to the right of the Denali, and it appeared to me that Mr. Breedlove's most practical avenue of escape would have been in the direction of myself, Detective Gorberg and Deputy Cruz.

16. At that time, shots were fired by several deputies (the "first volley"). I did not fire my weapon during the first volley.

17. After the first volley, there was a pause in the shooting to assess the situation and the threat level and to try and get Mr. Breedlove to comply and surrender. During this pause in fire, from my position, I observed one of Mr. Breedlove's hands go up, and I heard Mr. Breedlove say something to suggest that he was surrendering. I don't recall the exact words, but it appeared to be something to the effect of "they're up." From what I observed, I had the initial impression that Mr. Breedlove was surrendering at that time. I observed additional deputies approaching the Denali to presumably apprehend Mr. Breedlove.

18. However, I then heard the Denali's engine racing again and it struck Sergeant Ela's truck again (a small gap between the Denali and the truck had been created just prior to this time). At that point, out of fear that Mr. Breedlove's Denali could break free and hit and seriously injure or kill me and other deputies, I began firing my weapon, and other deputies fired their weapons as well (the "second volley").

19. After the second volley ended, no further shots were fired.

20. When I fired my firearm, I was in fear for my life and the lives of other deputies based on Mr. Breedlove's actions and the very real threat that his vehicle posed to me and the other deputies. It was my belief when I fired that Mr. Breedlove intended to seriously injure or kill me and other deputies on the scene by running us over, and it was my belief when I fired that I was protecting my life and the lives of other deputies who were in close enough proximity to Mr. Breedlove's Denali to be seriously injured or killed.

FURTHER AFFIANT SAYETH NOT.

JOHN LEONE

THE FOREGOING instrument was sworn to and subscribed before me this _______ day of May, 2012, by JOHN LEONE who is personally known to me (__) or who provided ____________________________________________ ___________ as proper identification.

Darla D. Jenkins
Notary Public

Darla D. Jenkins
(Print)

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
DARLA D. JENKINS
MY COMMISSION # DD 944350
EXPIRES: December 6, 2013
Bonded Thru Budget Notary Services


SHERIFF
EXHIBIT
tabbies
1


SHERIFF




00000123

EXHIBIT
2